## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **HEALTH CARE PARTNERS NEVADA, LLC,** | |
| Plaintiff, | |
| *v.* | Case No. _____ |
| **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,** and | **COMPLAINT** |
| **SYLVIA MATHEWS BURWELL,** in her official capacity as Secretary of the U.S. Department of Health and Human Services, | |
| Defendants. | |

Plaintiff Health Care Partners Nevada, LLC ("HCP"), brings this action against Defendants U.S. Department of Health and Human Services ("HHS") and Sylvia Mathews Burwell, in her capacity as Secretary of the U.S. Department of Health and Human Services (collectively, "the Government") seeking a declaratory judgment and injunctive relief to enable Health Care Partners Nevada, LLC to obtain limited testimony from a former employee of a government contractor.

### NATURE OF THE ACTION

1.     HCP is the claimant in an arbitration against the sellers of Las Vegas Solari Hospice Care, a business now owned and operated by HCP. To help prosecute claims in that arbitration, HCP requests deposition testimony from a former employee of a government contractor, Ms. Susan Feilen, in accordance with HHS's *"Touhy"* regulations that are set forth at

45 C.F.R. part 2. At most, HCP asks to depose Ms. Feilen for *only one hour by telephone* in order to obtain information, under oath, about her recollection of the communications she had with the sellers of Solari Hospice during a government-authorized audit in March 2012. In the alternative, HCP seeks responses to only six narrow interrogatories regarding the same subject matter.

2.     Ms. Feilen's testimony is necessary because she is the only eyewitness available who can dispute the claim by the sellers of Solari Hospice that they were unaware of the ongoing government audit of their improper Medicare hospice claims. Accordingly, the information is unavailable by other means.

3.     Ms. Feilen's testimony promotes the objectives of the Department of Health and Human Services because it would help ensure that a hospice provider is held accountable for submitting improper claims for reimbursement under the Medicare system, which is a primary concern for any government health benefit program. The agency's interests, and those of the federal government in general, are best advanced by ensuring that providers who seek to liquidate their overpayments through fraudulent sales of their businesses are held accountable. They are also promoted by assisting entities that have remedied improper practices in good faith. This will help deter such future behavior by other bad actors.

## PARTIES

4.     Plaintiff HCP is located in and organized under the laws of Nevada. HCP maintains a network of more than 200 primary care physician and more than 1,300 specialists. It also maintains medical clinics and specialty care affiliates throughout Las Vegas, North Las Vegas, Henderson, Boulder City, and Pahrump.

5.      Defendant HHS is an agency of the United States Government that has its principal office in Washington, D.C.  The Centers for Medicare and Medicaid Services ("CMS") is an operational division within HHS.

6.      Defendant Sylvia Mathews Burwell is the Secretary of HHS, and is the official ultimately responsible for the denial of Plaintiff's deposition request.  Secretary Burwell is being sued in her official capacity.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper in this Court under 28 US.C. § 1331 because the claims arise under the federal Administrative Procedure Act ("APA") and because an agency of the United States is a defendant.  Jurisdiction is also proper in this Court under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the APA, 5 U.S.C. §§ 701 through 706.  Section 702 of the APA gives a private party the right to seek judicial review when aggrieved by an agency action or inaction.  Section 706 of the APA empowers courts to compel agency action that is unlawfully withheld and to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because this is an action against an officer and agency of the United States, Defendant HHS resides in this judicial district, Defendant Burwell performs her official duties in this judicial district, and a substantial part of the events giving rise to this action occurred in this district.

## SUMMARY OF FACTS

### The Solari Hospice Acquisition

9.      Solari Hospice is a provider of hospice care that accepts Medicare beneficiaries

and, therefore, is subject to laws setting forth the conditions under which the Medicare program

will reimburse for that care.

10.     Medicare reimburses hospice services only for patients who are *terminally ill*,

which the Social Security Act defines as having a life expectancy of less than 180 days. *See* 42

U.S.C. § 1395x(dd)(3)(4).  To help ensure proper hospice claims and monitor reimbursements,

the federal government requires a provider to certify periodically that a patient receiving hospice

care is indeed terminally ill.  *See* 42 U.S.C. §§ 1395(f)(a)(7)(A)(i)-(ii).

11.     When a provider discovers that Medicare has paid for services that are not

covered or not medically necessary, the hospice must return the overpayment to Medicare within

60 days from the date the overpayment is first "identified."  *See* 42 U.S.C. § 1320a-7k(d)(2)(A).

The provider also must notify its Medicare contractor "in writing of the reason for the

overpayment."  *See* 42 U.S.C. § 1320a-7k(d)(1)(B).  A provider failing to comply with these

requirements is subject to potential civil monetary penalties and federal False Claims Act

liability.  *See* 31 U.S.C. § 3729(a)(1)(G); 42 U.S.C. § 1320a-7k(a)(10).

12.     In 2011, HCP began discussions with the sellers of Solari Hospice about

acquiring the business.

13.     As a material condition of the acquisition, the sellers agreed that "[c]onsummation

of the Transaction shall be subject to . . . [a]bsence of material pending or threatened . . .

investigations or other matters affecting the Seller, the Assets or the Transaction."

14.     Sellers also represented in sales contracts with HCP that there were "no pending or . . . threatened inquiries, audits . . . investigations or claims" that Solari Hospice was not compliant with all applicable Medicare laws and regulations.

15.     Finally, the sellers warranted that no such "audits . . . which relate in any way to a violation of any Healthcare Laws or other Regulation pertaining to the Governmental Healthcare Financing Programs" existed at the time of closing.

16.     In light of the detailed federal laws controlling hospice care and the severe penalties applicable to violations of those laws, the sellers' representations that no such audits existed were material in inducing HCP to enter into a series of contractual agreements for the acquisition of Solari.  HCP completed the acquisition of HCP on March 1, 2013.

## HCP's Independent Review and Arbitration Demand.

17.     Shortly after acquiring Solari Hospice on March 1, 2013, HCP became aware of allegations that Solari previously submitted claims for Medicare reimbursement for patients who were ineligible for hospice care.  HCP initiated its own independent audit of Medicare claims, which confirmed certain problems with Solari Hospice's previous hospice claims.

18.     HCP determined that the audit findings obligated it to conduct a retrospective review of Solari Hospice's claims.  HCP initiated the review to determine whether Solari Hospice had billed for services provided to patients who were not eligible for hospice care and therefore received Medicare overpayments of claims.  This review was for the time period 2010 through 2013, which includes the pre-acquisition period between January 1, 2010 and February 28, 2013.  HCP's consultant found numerous errors with the claims.

19.     HCP held several discussions with the sellers concerning the errors, and attempted to resolve differences concerning the indemnification implications of those errors.  As discussed

more fully below, the sellers have refused to acknowledge their obligation to reimburse HCP for identified overpayments. HCP ultimately paid the government for these claims, which were submitted during sellers' ownership of the hospice agency.

20.     On May 2, 2014, HCP filed a demand for arbitration and notice of claims against the sellers. On August 29, 2014, and again on March 13, 2015, HCP filed an amended demand for arbitration and notice of claims based on pre-closing conduct by the sellers. In light of events described below, HCP alleged several claims against the sellers in the second amended demand for arbitration, including fraud in the inducement of the acquisition of Solari Hospice. The arbitration is pending before the JAMS Arbitration, Mediation, and ADR Services (No. 1260002855), and a hearing is scheduled to begin on Tuesday, February 16, 2016.

21.     HCP has refunded to National Government Services (HCP's Medicare Administrative Contractor) a total of $10,299,524, of which $9,821,034 was attributable to claims submitted before HCP acquired Solari Hospice. Under a post-acquisition management agreement with HCP, the sellers continued to operate Solari Hospice. The sellers, in turn, were responsible for continuing to submit claims for reimbursement during the relevant post-acquisition period that were later identified as overpaid.

## The Federal Government Audit of Solari Hospice

22.     On November 12, 2014, HCP learned of an audit of Solari Hospice that the sellers did not disclose during HCP's diligence before the sale. The audit was performed by SafeGuard Services LLC ("SafeGuard"), which is the Zone Program Integrity Contractor ("ZPIC") for Zone 1 that encompasses Nevada. See SafeGuard Services LLC Audit dated November 12, 2014 (attached hereto as Exhibit A). ZPICs identify cases of suspected Medicare fraud, as well as

overpayments, investigate those cases thoroughly, and take prompt action to ensure that any improperly paid funds are returned to the Medicare Trust Fund.

23.     SafeGuard's audit covered the period from December 16, 2009 through March 15, 2012. *See id.* at 1.  It had been ongoing since March 2012, a year before the sale of Solari Hospice to HCP.  *See id.*  The audit revealed substantial problems with the sellers' compliance with Medicare rules and regulations, and sought repayment of nearly $1 million for violations of those laws.

24.     Although HCP was not previously aware that Solari Hospice was being audited under the Medicare Program, the sellers were clearly aware of the fact that SafeGuard Services was a Medicare audit contractor that had come to Solari Hospice to collect records for a Medicare audit of overpayments and potential fraud.  After learning of the results of the SafeGuard audit, HCP requested and received from CMS a letter to Solari Hospice Care, LLC dated March 6, 2012, in which SafeGuard explicitly requested medical records from the provider pursuant to "Section 1842 of the Social Security Act (the Act) [which] authorizes, and requires, Medicare contractors to conduct audits to determine that Medicare claims are billed and paid appropriately."  *See* Letter from SafeGuard to Solari Hospice Care, LLC (Mar. 6, 2012) (attached hereto as Exhibit B).  The letterhead bore the names "Centers for Medicare & Medicaid Services" and "SafeGuard Services."  The letter was also sent by George Gallegos, who was identified as a "Fraud Investigator."  *Id.*

25.     HCP asked the sellers to explain why they had not disclosed the SafeGuard audit during the diligence conducted before the Solari Hospice acquisition.  In December 2014 Interrogatory responses, one of the sellers, Candis Armour, stated that "[i]n March 2012 the Solari executive director was advised that 2-3 people were on site.  They presented SafeGuard

business cards. The individuals did not identify themselves as contractors for Medicare, ZPIC or anything other than Safeguard." *See* Interrogatory Response 10 (attached hereto as Exhibit C). Ms. Armour also claimed that SafeGuard only "stated they were auditing hospices in Las Vegas," and that she had no contact with SafeGuard after shipping medical records to the company. *See id.* at 12.

26.     HCP deposed Ms. Armour on January 8, 2016. In response to HCP's questions, Ms. Armour changed her story on the SafeGuard audit by stating that "at the time" she was "not aware that SafeGuard is an auditor." When asked to reconcile this claim with her Interrogatory response that the SafeGuard Services employees told her that "they were auditing hospices in Las Vegas," Ms. Armour responded: "That was my unfortunate choice of words at the time." Ms. Armour also claimed that she "never saw [the March 6, 2012 letter from SafeGuard Services] until this arbitration or this complaint." Asked whether it was possible that SafeGuard had given her the letter, Ms. Armour responded twice: "I have never seen this letter until the legal action [arbitration]."

### HCP's Limited *Touhy* Request for Testimony

27.     On January 14, 2016, HCP delivered a "*Touhy* Request for Testimony of Certain Government Contractors" to Andrew Slavitt, the Acting Administrator for CMS. *See* Letter to Andrew Slavitt (attached hereto as Exhibit D)." HCP requested authorization from CMS to obtain testimony from three former SafeGuard employees who could provide factual testimony about their communications with Solari Hospice during the SafeGuard audit.

28.     On February 1, 2016, Dr. Shantanu Agrawal, the Deputy Administrator and Director for the Center for Program Integrity, responded by letter to deny HCP's *Touhy* request. *See* Letter to Mark D. Polston dated February 1, 2016 (attached hereto as Exhibit E).

29.     On January 29, 2016, HCP discovered that Susan Feilen, a former employee of SafeGuard Services, visited Solari Hospice in March 2012.  On January 30 and 31, 2016, counsel for HCP spoke to Ms. Feilen on two occasions by telephone.  Ms. Feilen reported that she recalled visiting Solari Hospice under the authority of CMS in order to conduct an unannounced visit and collect medical records.

30.     Ms. Feilen recalled that she handed two letters to a representative of Solari Hospice.  The first letter was from CMS.  It explained that SafeGuard was acting under CMS's authority and it instructed Solari Hospice to comply with SafeGuard's requests as if they were from CMS.  The second letter, which displayed CMS and SafeGuard's logos, contained a request for medical records for specific patients at Solari Hospice.  Finally, Ms. Feilen explained that she presented her business card to a Solari Hospice representative.  The business card identified Ms. Feilen as a "fraud investigator."

31.     Ms. Feilen's statements demonstrate that sworn deposition testimony by Ms. Armour is untrue.  Ms. Armour testified that that the sellers were not aware that SafeGuard was conducting a Medicare audit before HCP's acquisition of Solari Hospice.

32.     On February 1, 2016, HCP delivered a second "*Touhy* Request for Testimony of Certain Government Contractors" to Mr. Slavitt.  *See* Letter to Andrew Slavitt (attached hereto as Exhibit F)."

33.     As the Acting Administrator for CMS, Mr. Slavitt was the proper recipient of HCP's *Touhy* request.  *See* 45 C.F.R. §§ 2.2(6), 2.4(a).

34.     As required by HHS's regulations, HCP set forth "the nature of the requested testimony, why the information sought is unavailable by other means, and the reasons why the testimony would be in the interest of DHHS or the federal government."  45 C.F.R. § 2.4(a).

35.     HCP specifically requested agency authorization to conduct a one-hour telephone deposition of Ms. Feilen to obtain sworn testimony about her communications with Solari Hospice representatives.   HCP explained the limited nature of the deposition, which would concern only "what Ms. Feilen communicated both verbally and physically to Solari Hospice during her visit – and would not venture into any topics that could concern the government such as CMS policy or the results of any investigation that SafeGuard Services might have conducted from Solari Hospice." Ex. F.  HCP made clear that it was not seeking testimony as to CMS policy or information regarding the substance or results of any investigation performed by SafeGuard Services.

36.     HCP also explained that "Ms. Feilen's statements [] clearly prove that the then-Executive Director of Solari Hospice was made aware of the reasons for ZPIC's [SafeGuard's] visit" and that her "testimony to these facts would be far more probative and powerful than any of the documents [HCP] currently possesses." *Id.*

37.     HCP explained that the denial of testimony from Ms. Feilen would allow the true facts about the disclosure of the SafeGuard audit to remain concealed, resulting in a significant injustice to HCP because it had paid millions of dollars to the Federal Government under the Medicare program as a direct result of the sellers' misconduct. *See id.*

38.     On  February 3, 2016, in an effort to reach an agreeable solution to the Government's resistance to allowing Ms. Feilen's testimony, HCP offered in the alternative to serve six narrow interrogatory requests to Ms. Feilen asking about her March 2012 visit to Solari Hospice.  CMS never agreed to this compromise and did not even address it in its responses.

**Defendants' Denial of the *Touhy* Request is Arbitrary, Capricious, and Contrary to Law**

39.     On February 5, 2016, Dr. Agrawal responded by letter to HCP's second *Touhy*

request for testimony (the "Response"). *See* Letter to Mark D. Polston dated February 5, 2016

(attached hereto as Exhibit G).

40.     The Response is arbitrary, capricious, an abuse of discretion, contrary to HHS's

own regulations, and contrary to law.

41.     Acknowledging that HCP intended to use Ms. Feilen's testimony "to establish

that Solari had knowledge of the audit in March 2012," Dr. Argawal denied the request for two

reasons.

42.     First, the Dr. Argawal incorrectly determined that information about Ms. Feilen's

visit to Solari Hospice is available "by other means." To the contrary, Ms. Feilen is an

*eyewitness* to the communications with Solari Hospice that Ms. Armour now disputes.  Only Ms.

Feilen can speak to what she said to Ms. Armour about the nature of her visit and whether Ms.

Feilen in fact hand delivered these letters to Ms. Armour.  This eyewitness testimony of a factual

occurrence is not available by other means.

43.     Second, Dr. Argawal erroneously claimed that HCP "does not identify the

Department's objective that would be served by the [Ms. Feilen's] testimony," ignoring that

HCP's letter sets forth facts showing the sellers concealed a CMS audit before selling the

hospice provider to an unsuspecting purchaser, HCP. *Id.* It is in the interests of HHS and the

federal government to help hold accountable Medicare providers who seek to liquidate the

receipt of Medicare overpayments by conducting fraudulent sales to unwitting third parties.  By

granting the testimony, the government can reasonably expect to deter these sellers from

engaging in such behavior in the future and, more generally, send a message to other like-minded providers who hope to abscond with Medicare funds.

## COUNT
### - Violation of APA -

44.     Paragraphs 1 to 43 are incorporated as if fully set forth herein.

45.     Defendants' Response constitutes a final agency action for the purposes of the Administrative Procedure Act.

46.     Defendants' refusal to permit Plaintiff to depose one former employee of a government contractor for only one hour by telephone is an unlawful failure to act in accordance with HHS regulations.

47.     Defendants' refusal to permit the deposition to proceed should be set aside because that action, or failure to act, is arbitrary, capricious, an abuse of discretion, and contrary to law.

48.     As a result of Defendants' refusal to permit the deposition to go forward, Plaintiff is deprived of the opportunity to obtain evidence that is of central importance to its ability to prosecute its claims of fraud, among others, in its matter pending before the JAMS Arbitration, Mediation, and ADR Services (No. 1260002855).

## PRAYER FOR RELIEF

49.     WHEREFORE, Plaintiff HealthCare Partners Nevada, LLC requests that this Court enter judgment against Defendants as follows:

   a.      Issue a Declaratory Judgment that Defendants' refusal to permit the deposition sought by Plaintiff is arbitrary, capricious, and abuse of discretion, and contrary to law;

- 12 -

b.      Set aside the final agency action of Defendants refusing to permit the deposition sought by Plaintiff;

c.      Set aside the final agency action of Defendants refusing to permit the interrogatories sought by Plaintiff;

d.      Issue an injunction compelling Defendants either to permit the deposition sought by Plaintiff to take place no later than 24 hours after the Court's Order; or to compel the Defendants to permit Ms. Feilen to respond to six interrogatories no later than 24 hours after the Court's Order; and

e.      Grant other relief to which Plaintiff may be entitled to in law or equity.

Respectfully submitted,

/s/

Matthew M. Leland
D.C. Bar. No. 495812
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 200
Washington, District of Columbia 20006
Telephone: (202) 626-5527
Facsimile: (202) 626-3737
mleland@kslaw.com

*Counsel for HealthCare Partners Nevada, LLC*

Dated: February 12, 2016

## CERTIFICATE OF SERVICE

I certify that on February 12, 2016, I caused a true and correct copy of the foregoing

Complaint to be served by hand delivery to:

Channing D. Phillips
United States Attorney's Office
For the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530

The Honorable Sylvia Mathews Burwell
c/o Office of General Counsel
Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

Jacqueline Coleman Snead
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
(202) 514-3418
Jacqueline.Snead@usdoj.gov

/s/ _____
Matthew M. Leland
D.C. Bar No. 495812
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 200
Washington, District of Columbia 20006
Telephone: (202) 626-5527
Facsimile: (202) 626-3737
mleland@kslaw.com

*Counsel for HealthCare Partners Nevada, LLC*

- 14 -